Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
20827 North Cave Creek Road, Suite 101
Phoenix, AZ  85024

Telephone:  (602) 482-4300
Facsimile: (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Howard Roach*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Howard Roach, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Unum Life Insurance Company of America, Compass Bancshares Inc., Compass Bancshares Employee Disability Plan; | |
| Defendants. | |

Now comes the Plaintiff Howard Roach (hereinafter referred to as "Plaintiff"), by and through his attorney, Scott E. Davis, and complaining against the Defendants, he states:

### *Jurisdiction*

1.      Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28

-1-

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

### Parties

2.      Plaintiff is a resident of Maricopa County, Arizona.

3.      Upon information and belief, Defendant Compass Bancshares Inc. (hereinafter referred to as the "Company") sponsored, subscribed to and administered a group disability insurance policy which was fully insured and administered by Unum Life Insurance Company of America (hereinafter referred to as "Unum").  The specific long term disability policy is known as group policy 394220.  The specific waiver of life insurance premium policy is known as group policy 127030.

4.      The Company's purpose in subscribing to the Unum policy was to provide disability insurance and other benefits for its employees.  Upon information and belief, the Unum policy may have been included in and part of the Compass Bancshares Inc. Long Term Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide Company's employees with welfare benefits.  At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

5.      Upon information and belief, the Company or Plan may have delegated responsibility for the plan and/or claim administration of the policy to Unum.  Plaintiff believes that as it relates to his claim, Unum functioned in a fiduciary capacity as the Plan and/or Claim Administrator.

6.      Upon information and belief, Plaintiff believes Unum operated under a conflict of interest in evaluating his claim due to the fact it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of

benefits; *to wit,* Unum's conflict existed in that if it found Plaintiff was disabled it was also liable for payment of those benefits.[1]

7. The Company, Plan and Unum conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

### *Venue*

8. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

9. Incident to his employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits he may be entitled to as a result of being found disabled.

10. After working for the Company as a loyal employee, Plaintiff became disabled due to serious medical conditions and was unable to work in his designated occupation as a Merchant Filed Sales Rep II on or about March 2, 2009. Plaintiff has remained disabled as that term is defined in the relevant policy continuously since that date and has not been able to return to any occupation as a result of his serious medical conditions.

---

[1] "A plan administrator's dual role of both evaluating and paying benefits claims creates the kind of conflict of interest referred to in Firestone. *That conclusion is clear where it is the employer itself that both funds the plan and evaluates the claim*, but a conflict also exists where, as here, the plan administrator is an insurance company. For one thing, the employer's own conflict may extend to its selection of an insurance company to administer its plan." *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (U.S. 2008) (emphasis added).

11.     Plaintiff thereafter applied for long term disability benefits under the relevant Unum policy, group policy 394220.

12.     The relevant UNUM policy provides the following definition of a covered disability and applies to Plaintiff's claim for the first 24 months of benefits:

You are disabled when Unum determines that:

-you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and

-you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury

13.     The relevant UNUM policy provides the following definition of a covered disability and applies to Plaintiff's claim:

-After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training, or experience.

14.     Plaintiff also applied for waiver of premium coverage on his group life insurance policy.

15.     The relevant Unum waiver of premium coverage on his group life insurance policy, group policy 127030, provides the following definition of disability which applies to Plaintiff's claim:

You are disabled when Unum determines that:

-during the elimination period, you are not working in any occupation due to your injury or sickness; and

-after the elimination period, due to the same injury or sickness, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by training, education or experience.

16.     Plaintiff received long term disability benefits under a reservation of rights from August 31, 2009 through January 7, 2010 so Unum could complete its review of Plaintiff's claim.

17.     In support of his continued claim for long term disability benefits Plaintiff submitted to Unum medical records from his treating physicians supporting his total disability and the fact he met the definition of disability set forth by the relevant Unum policy.

18.     Unum notified Plaintiff in a letter dated January 7, 2010 that it had denied his claim for benefits.

19.     Plaintiff timely appealed the denial of his claim in a letter dated March 24, 2010.

20.     As part of his appeal, Plaintiff submitted additional evidence to support his claim for disability benefits.  This evidence included an attending physician's statement from his treating physician, who is board certified in internal medicine, and who opined Plaintiff's medical conditions prevented him from being able to work in any occupation.

21.     In a letter dated April 30, 2010, Unum notified Plaintiff it needed an extension of time to complete review of Plaintiff's appeal.

22.     Also as part of his ongoing appeal, Plaintiff submitted a May 28, 2010 evaluation Plaintiff had undergone which showed Plaintiff's limitations would prevent him from working in any occupation.

23.     Unum notified Plaintiff in a letter dated June 4, 2010 that it had completed its review of Plaintiff's appeal and had denied his appeal for long term disability benefits and waiver of insurance premium.

24.     Plaintiff notified Unum in letter dated June 10, 2010 that Plaintiff disagreed with Unum's decision and requested an appeal.

25.     Unum notified Plaintiff in a letter dated July 22, 2010 that it had upheld the denial of Plaintiff's claim for long term disability benefits and waiver of insurance

premiums.   In the letter, Unum also notified Plaintiff that he had exhausted his administrative levels of review and could file a civil action in federal court pursuant to ERISA.

26.    Unum's review of Plaintiff's medical records was flawed because it was selective and sought to de-emphasize evidence he submitted which proved he was disabled and his disability was not limited by the policy's disability benefit limitation provision.

27.    Unum's denial letter confirms it failed to provide a full and fair review pursuant to ERISA because it failed to consider and/or selectively reviewed most if not all of Plaintiff's evidence submitted.

28.    Unum's denial failed to provide Plaintiff with a full and fair review by failing to properly investigate his claim in violation of ERISA, specifically 29 C.F.R. § 2560.503-1(h) because it failed to consider and/or selectively reviewed most if not all of his evidence which adequately documented objective medical evidence of his serious medical conditions and the fact he met the relevant definitions of disability under the policies. Unum denied Plaintiff a lawful, full and fair review pursuant to ERISA for various reasons including but not limited to, failing to consider all evidence submitted by Plaintiff or de-emphasizing the medical evidence supporting Plaintiff's disability, failing to consider all the limitations set forth in his medical evidence, failing to obtain a peer review evaluation from a disinterested, qualified physician, failing to obtain any independent medical evaluation of Plaintiff's serious medical conditions, failing to evaluate the combination of all of Plaintiff's serious medical conditions, failing to engage Plaintiff in a dialogue to inform him of what evidence he needed to submit in order to perfect his claim, and failing to consider the combined effect of Plaintiff's medications.   The evidence submitted by

Plaintiff to Unum is sufficient for this Court to find that he met the definitions of disability in the relevant Unum policies.

29.    Unum has been criticized by federal courts for the manner in which it selectively reviews claims and terminates them when it is in the company's best interest. The $26,394,765.39 dollar verdict and this Court's findings of fact as rendered in *Merrick v. Paul Revere Life Ins*., 594 F. Supp. 2d 1168 (D. Nev. 2008) (Attached hereto as Exhibit "A" is a copy of the *Merrick* decision), provides ample evidence of Unum's conflicts of interest and the self-serving manner in which it manages, evaluates and denies disability claims.

30.    The evidence which supports a finding that Plaintiff met the "own occupation" definition of disability in the LTD claim is also sufficient to meet the LTD Policy's "any occupation" definition of disability; therefore, Plaintiff believes he is eligible not only for the remaining "own occupation" benefits that are available pursuant to the policy, but is also entitled to LTD benefits pursuant to the "any occupation" definition of disability.

31.    Plaintiff believes discovery is necessary in this litigation for the Court to fully understand Unum's and any individual's conflict of interest who was involved in the review of his claim and how those conflicts either alone or in combination resulted in the denial of his claim.[2]

32.    Unum has notified Plaintiff he has exhausted his administrative appeals.

33.    Plaintiff believes a reason Unum terminated his claim for long term disability benefits is due to its aforementioned structural financial conflict of interest in that it was the

---

[2]  Paul Revere Life Insurance Company is a subsidiary of UnumProvident Corporation.

sole decision maker with regard to whether Plaintiff was disabled pursuant to the policy and the payor of benefits if it approved Plaintiff's claim.

34.     In evaluating Plaintiff's claim on appeal, Unum had an obligation pursuant to ERISA to administer Plaintiff's claims "solely in his best interests and other participants" which it failed to do.[3]

35.     Plaintiff believes the reason Unum provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its conflict of interest and this conflict is the reason his claims for disability insurance benefits and life insurance waiver of premium were denied.

36.     Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of Unum and any individual who reviewed his claims and the Court may properly weigh and consider evidence regarding the nature, extent and effect of *any* conflict of interest which may have impacted or influenced Unum's decision to deny his claim.

37.     With regard to whether Plaintiff meets the definitions of disability set forth in the relevant policies, the Court should review the evidence in Plaintiff's claim *de novo* because the unlawful violations of ERISA committed by Unum as referenced herein are flagrant.

---

[3] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

38.     As a direct result of Unum's decision to deny Plaintiff's disability and waiver of premium claims he  has been injured and suffered damages in the form of lost disability benefits in addition to other potential employee benefits he may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled.

39.     Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

40.     Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate him for the losses he incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A.     For an Order that Plaintiff meets the Long Term Disability Policy's definitions of disability for "own occupation" and "any occupation" benefits and to reinstate his life insurance coverage while waiving the premium on that specific policy as a result of him being found disabled pursuant to the any occupation definition of disability as set forth in the disability policy.  Plaintiff seeks the aforementioned benefits from the relevant policies from the date he was first denied these benefits through the date of judgment and prejudgment interest thereon as well as any other employee benefits he may be entitled to from the Plan and/or Company as a result of being found disabled;

B.     For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time as he meets the Plan or policy conditions for termination of benefits and waiver of insurance premium;

C.     For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D.     For such other and further relief as the Court deems just and proper.

DATED this 20th day of December, 2010.

SCOTT E. DAVIS, P.C.

By:   */s/ Scott E. Davis, Esq.*
         Scott E. Davis
         Attorney for Plaintiff